STEVEN W. MOORE (SBN 193068)
swmoore@foxrothschild.com
DAVID F. FAUSTMAN (SBN 81862)
dfaustman@foxrothschild.com
TYREEN TORNER (SBN 249980)
ttorner@foxrothschild.com
STEVEN WONG (SBN 293343)
swong@foxrothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200
San Francisco, CA 94104-2670
Telephone:    415.364.5540
Facsimile:    415.391.4436

Attorneys for Defendant
WESTERN DISTRIBUTING COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR MEDINA, individually, and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>   v.<br><br>WESTERN DISTRIBUTING COMPANY, INC. dba WESTERN DISTRIBUTING TRANSPORTATION CORP., a Colorado Corporation, and DOES 1 through 25, inclusive,<br><br>                  Defendants. | Case No.<br><br>**NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446**<br><br><br><br><br><br><br><br><br><br>Action Filed:   December 2, 2020<br>Trial Date:     None |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND PLAINTIFF'S ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Western Distributing Company, Inc. dba Western Distributing Transportation Corp. ("Defendant") hereby removes the state court action described herein, filed by Plaintiff Cesar Medina ("Plaintiff") in the Superior Court of the State of California, County of Monterey, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. sections 1332(d), 1441, and 1446. Defendant makes the following allegations in support of its Notice of Removal:

## I.   STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

## II.   VENUE

2. Plaintiff originally brought this action in the Superior Court of the State of California, County of Monterey. Therefore, venue lies in the Northern District of California pursuant to 28 U.S.C. sections 84(c), 1441(a), and 1446(a).

## III.   PLEADINGS, PROCESS, AND ORDERS

3. On December 2, 2020, Plaintiff filed an unverified Class Action Complaint (the "Complaint") against Defendants and various Does 1 through 25 in the Monterey County Superior Court, entitled *CESAR MEDINA, individually and on behalf of all other similarly situated, Plaintiff, v. WESTERN DISTRIBUTING COMPANY, INC. dba WESTERN DISTRIBUTING TRANSPORTATION CORP., a Colorado Corporation, and DOES 1 through 25, inclusive, Defendants*, designated Case No. 20CV003244 (the "State Court Action").

4.      The Complaint asserts the following 12 causes of action:

(1)   Failure to Pay All Earned Wages (California Labor Code §§ 1194 and 1194.2, and Wage Orders);

(2)   Failure to Pay All Earned Overtime Wages (California Labor Code §§ 510, 512, 1182.12 and Wage Orders);

(3)   Failure to Permit Paid 10 Minute Rest Periods (8 Cal. Code Reg. § 11070 and California Labor Code § 226.7);

(4)   Failure to Provide 30 Minute Meal Periods (8 Cal. Code Reg. § 11070 and California Labor Code § 226.7);

(5)   Failure to Timely Pay All Wages and Compensation (California Labor Code § 204);

(6)   Failure to Pay All Earned Wages and Compensation Upon Termination of Employment (California Labor Code §§ 201, 201.5, 202, 203, 205.5);

(7)   Failure to Provide Lawful Wage Statements (California Labor Code § 226);

(8)   Violation of California Wage Theft Prevention Act (California Labor Code § 2810.5);

(9)   Violation of Labor Code § 206.5 (Requiring Execution of Statement of Hours as a Condition of Being Paid)

(10)  Failure to Indemnify for Work-Related Expenses (California Labor Code § 2802);

(11)  Violation of Labor Code § 226.2;

(12)  Unfair Business Practices (California Business and Professions Code § 17200, et seq.)

The allegations in the Complaint are incorporated into this Notice of Removal by reference without admitting the truth of any of them.

5.      On March 2, 2021, Defendant was served, via personal service on Defendant's agent for service of process, a copy of Plaintiff's Summons, Complaint, Civil Cover Sheet and Notice of Assignment and Case Management Conference. Copies of these documents are attached hereto as **Exhibit A**.

6.      On April 1, 2021, Defendant timely filed and served its Answer to the Complaint. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit B**.

7.      **Exhibits A and B** comprise all process, pleadings and order served on or by Defendant in the State Court Action.

///

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT                    Case No. _____
TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446
121194871.v2

## IV.    TIMELINESS OF REMOVAL

8.    This Notice of Removal is timely in that it has been filed and served within 30 days of the March 2, 2021, service of the Summons and Complaint on Defendant. 28 USC § 1446(b)(2)B) ("Each defendant shall have 30 days after receipt by or service on that defendant" by which to file the notice of removal.); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (defendant's period for removal will be no less than 30 days from service).

9.    Defendant is the only named defendant in this action.

10.    The Doe defendants named in the Complaint do not affect this Notice of Removal. *Northern Illinois Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 272 (7th Cir. 1982) ("Nominal parties, however, are disregarded for removal purposes and need not join in the petition."). Moreover, Plaintiff has not filed or served any document indicating that any "Doe defendants" have been served with the Summons and Complaint. Hence the Doe defendants need not join in the Notice of Removal. See *United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("The rule of unanimity does not apply to nominal, unknown or fraudulently joined parties.") (internal quotations omitted).

## V.    CAFA JURISDICTION

11.    CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, where there are at least 100 putative class members, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets each CAFA requirement for removal, and is properly removed by the filing of this Notice of Removal.

### A.    This Is A Class Action

12.    Plaintiff filed this action as a class action. (Complaint, ¶¶ 61-62, 76-93.)

### B.    The Proposed Class Contains At Least 100 Members

13.    The provisions of CAFA apply to proposed class actions involving 100 individuals or more. *See* 28 U.S.C. § 1332(d)(5)(B). This requirement is met in this case.  *See* Fiedler Decl. ¶ 4.

14.    Plaintiff brings this lawsuit on behalf of himself and "all present and former non-exempt

1   individuals (excluding clerical and administrative personnel) who performed work for [Defendants] in

2   the State of California, at any time during the period of four years prior to the filing of the complaint in

3   this action up to the present." (Complaint, ¶ 62.) The Complaint defines "Class Period" as the period of

4   time of four years prior to the filing of the complaint [on December 2, 2020] in this action up to, and

5   including, the present." (*Id.*) Thus, the Class Period is December 2, 2016 to the present.

6       15.   "Over-the-road" driver, also referred to as long-haul trucker, is the only non-clerical,

7   non-administrative and non-exempt job position that performed work for Defendant in California during

8   the Class Period. Defendant has employed at least 487 persons in this position during the Class Period.

9   (*See* Fiedler Decl. ¶ 4.)  Thus, CAFA's requirement that the action involve 100 or more individuals is

10   satisfied. (*See also* Complaint, ¶ 78 ["Plaintiff is informed, believes, and thereon alleges that the number

11   of members of the Class exceeds one hundred (100)."].)

12       **C.**    **Defendant Is Not A Governmental Entity**

13       16.   CAFA does not apply to class actions where "primary defendants are States, State

14   officials, or other governmental entities against whom the district court may be foreclosed from ordering

15   relief." 28 U.S.C. § 1332(d)(5)(B).

16       17.   Defendant is a corporation. It is not a state, state official, or other government entity

17   other government entities exempt from CAFA. (Declaration of Vieri Gaines Guadagni ["Guadagni

18   Decl."], ¶ 3.)

19       **D.**    **CAFA Diversity Of Citizenship Exists**

20       18.   CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a

21   class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A),

22   1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes

23   and not the citizenship of the unnamed putative class members. *Snyder v. Harris*, 394 U.S. 332, 339-40

24   (1969). Additionally, for removal purposes, diversity must exist both at the time the action was

25   commenced in state court and at the time of removal. *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300

26   F.3d 1129, 1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff is a

27   citizen of a different state than Defendant.

28   *///*

19.    For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that a person's domicile is the place he resides with the intention to remain). Furthermore, allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Overholt v. Airista Flow Inc.*, No. 17cv1337-MMA (AGS), 2018 WL 355231, at *4 (S.D. Cal. Jan. 10, 2018) (citations omitted).

20.    Here, at the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff resided in and as a citizen of the State of California. (*See also* Complaint, ¶ 1 ["Plaintiff is an adult person who is domiciled in the State of California]; Declaration of Emily Fiedler ["Fiedler Dec."], ¶ 6 ["Throughout his employment at Western [in 2019], Mr. Medina represented that his place of residence was in the City of Hanford, in Kings County, California."].)

21.    For diversity purposes, a corporation "shall be deemed a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(l). A corporation is also deemed to be a citizen of the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). As clarified by the Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), Section 1332(c)(1)'s use of "the phrase 'principal place of business' refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center." *Id.* at 80-81. Except in unusual circumstances, a corporation's corporate headquarters is its nerve center. *Id.* at 93-94.

22.    Defendant is incorporated under the laws of the State of Colorado and its headquarters and principal place of business is in Denver, Colorado. (Guadagni Decl., ¶ 3.) All of Defendant's corporate decisions, including operational, executive, administrative, and policymaking decisions, are made from its Denver, Colorado headquarters. (Guadagni Decl., ¶ 3.) Defendant's management and administrative functions are also located in its Denver headquarters, including human resources, finance, treasury, payroll, and safety. (Guadagni Decl., ¶ 3.) Defendant's "nerve center" and, thus, its principal

6

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT
TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446
121194871.v2                                                          Case No. _____

place of business, is located in Denver, Colorado. *See Hertz*, 559 U.S. at 92-93.

23.    Accordingly, for purposes of diversity jurisdiction, Defendant is a citizen of Colorado and not a citizen of the State of California.

24.    The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) ("28 U.S.C. § 144l(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal.").

25.    Accordingly, the named Plaintiff is a citizen of a state (California) different from Defendant (Colorado), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

**E.    The Amount In Controversy Exceeds $5,000,000**

26.    The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). In *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014), the Supreme Court recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* at 554. "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court diversity jurisdiction. *Id.* at 553.

27.    For purposes of determining whether the amount in controversy has been satisfied, the Court must presume that Plaintiff will prevail on his claims. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.")). The ultimate inquiry is the amount that is put "in controversy" by the allegations of a plaintiff's complaint, not what a defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th

Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants "are still free to challenge the actual amount of damages in subsequent proceedings and at trial" because they are only estimating the amount in controversy). Defendant "may make mathematical calculations using reasonable averages of, for example, hourly, monthly, and annual incomes of comparable employees when assessing the amount-in-controversy." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (citing *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148-49 (C.D. Cal. 2010)).

28.    In addition, Defendant may assume violation rates of 100% in calculating the amount in controversy when, as here, the complaint does not allege a more precise calculation, but instead Plaintiff alleges he and putative class members suffered the alleged violations "***regularly and systematically***" and "***each day and week***" "***throughout their employment***" based on Defendant's "***uniform policies and practices***." (Complaint at ¶¶ 84,  85, 104, 105, emphasis added.) *See, e.g., Lopez v. First Student, Inc.*, 427 F.Supp.3d 1230, 1236 (C.D. Cal. 2019) ("Plaintiffs' failure to limit their allegations in any meaningful way — and indeed, the allegations suggest the systematic and expansive nature of the split shift wage violations — justifies Defendants' assumptions of a 100% split shift violation rate and maximum recovery."); *Ritenour v. Carrington Mortgage Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate."); *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715, at *20 (E.D. Cal. June 2, 2011); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *8-9 (N.D. Cal. Aug. 14, 2008); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008); *Alvarez v. Ltd. Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages." (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)). These courts recognize "that imposing overly stringent requirements on a defendant to proving the amount in controversy would run the risk of essentially asking defendants to prove the plaintiffs' case." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *5 (N.D. Cal. June 14, 2013).

29.    A defendant is thus not obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz*, 2007 WL 1302504, at \*5 (citing *McGraw*, 863 F. Supp. 2d at 434); *see also Jones v. Tween Brands, Inc.*, No. 2:14-CV-1631-ODW (PLAx), 2014 WL 1607636, at \*2 (C.D. Cal. Apr. 22, 2014) (finding defendant did not need to provide payroll data to support removal because defendant "is not required to meet such a high burden.") (citing *Muniz*, 2007 WL 1302504, at \*7); *Thomas*, 2011 WL 2173715, at \*20 ("[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." (citing *Muniz*, 2007 WL 1302504, at \*3)).

30.    Defendant denies the validity and merit of the entirety of Plaintiff's claims, the legal theories upon which they are ostensibly based, and the claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiff or the putative class is entitled to any damages or penalties whatsoever, it is readily apparent that the allegations of Plaintiff's Complaint establish that the amount in controversy exceeds CAFA's jurisdictional minimum of $5,000,000.

31.    When, as here, the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. Defendant's Notice of Removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554.

### i.    First and Second Causes of Action: Alleged Unpaid Wages

32.    In support of his First Cause of Action for Failure to Pay All Earned Wages in violation of California Labor Code section 1194 and 1194.2 and Wage Orders, Plaintiff alleges:

> … Defendants unlawfully failed to pay Plaintiff and his similarly situated members of the Class for all the time worked *as a result of Defendants' labor policies and practices*, including, but not limited to: (a) requiring members to clock out for a purported meal period and, yet, continue to work, and/or automatically deducting thirty (30) minutes from Class members' time worked even though a valid meal period had not been provided the Class Members; not compensating Plaintiff and his fellow members of the Class for non-productive time including, but not limited to, detention and/or unloading time; unlawfully altering timecards and payroll records so as to falsely deduct and/or not accurately record, time from the hours worked by Plaintiff and his fellow members of the Class

9

despite the fact that they continued to work during said period so deducted
and/or not recorded. [¶]

… Defendants unlawfully failed and refused and continue to fail and
refuse to pay compensation for all hours worked by Plaintiff and the Class
at their regular rate of pay.

(Complaint, ¶ 96, 97, emphasis added.) Plaintiff makes no allegations regarding the frequency or

duration of the claimed time worked off-the-clock for himself or any Putative Class Member.

33.    In support of his Second Cause of Action for Failure to Pay All Earned Overtime Wages

in violation of California Labor Code sections 510, 512 and 1182.12 and Wage Orders, Plaintiff alleges:

…[F]or *each day and week* within the applicable limitations period,
***during the course of their employment*** with Defendants, Plaintiff and his
fellow members of the Class performed work without being paid the
required overtime wage under California law, including, but not limited to,
the Wage Order and Labor Code § 1182.12. [¶]

…[F]or *each day and week* within the applicable limitations period,
***during the course of their employment*** with Defendants, Plaintiff and his
fellow members of the Class performed work in excess of eight hours per
day, forty hours per week, and/or the first eight hours of work on a seventh
consecutive day as well as double their regular rate of pay for work in
excess of twelve hours per day or in excess of eight hours on the seventh
consecutive day of work, without being paid the required overtime wages
under California law, including, but not limited to, the Wage Order and
Labor Code §§ 510, 512.

(Complaint, ¶¶ 104 and 105, emphasis added.)

34.    On behalf of himself and putative class members, Plaintiff seeks to recover unpaid

wages, prejudgment interest, reasonable attorney's fees and costs of suit, and disgorgement of

Defendant's profits. (Complaint ¶¶ 98, 100, 101, 110, 111.)

35.    Defendant denies that any employee, including Plaintiff, has any claim for unpaid wages.

36.    Plaintiff does not allege on behalf of himself, or any other Putative Class Member, any

minimum or maximum amount of time work for which wages are due other than to assert that they each

one of them is owed for unpaid daily overtime for every day worked, and unpaid weekly overtime for

every week worked.

37.    Between December 2, 2016 and March 31, 2021, Defendant collectively employed at

least 487 interstate drivers. (Fiedler Decl., ¶ 4.)  These employees worked a combined total of

approximately 33,053 workweeks during this time period. (Fiedler Decl., ¶ 7.)  Interstate drivers work

an average of 5 days a week, including an average of 2 days per week in California. (Fiedler Decl., ¶ 11.)  Interstate drivers also work an average of 8.2 hours per day and 46 hours per week. (Fiedler Decl., ¶ 11.)  In 2016, their estimated average weekly pay was approximately $1,339.12, and increased year over year to the current average of $1,504.63 per week. (Fiedler Decl., ¶ 10.)  Based on the lowest average weekly pay during class period, $1,339.12, and assuming 46 hours worked per week on average, the average hourly rate of pay is $29.11.

38.    Defendants "may make mathematical calculations using reasonable averages of, for example, hourly, monthly, and annual incomes of comparable employees when assessing the amount-in-controversy." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (citing *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148-49 (C.D. Cal. 2010)). As interstate drivers worked an average of 2 days per week in California during each of the 33,053 workweeks they collectively worked from December 2, 2016 to March 31, 2021, and applying a conservative estimate one hour of unpaid overtime per day worked in California, and applying the average hourly rate of $29.11, the amount in controversy for Plaintiff's First and Second Cause of Action is **$5,773,295.66**:

- Average hourly rate of $29.11 x 1.5 = $43.67 average overtime rate
- Conservative estimate of one hour of unpaid overtime ($43.67) per day worked in California each week (2 days) = $87.33 in unpaid overtime per workweek.
- $87.33 x 33,053 workweeks =  $2,886,647.83 in unpaid overtime

39.    In addition, Plaintiff seeks "[l]iquidated damages pursuant to Labor Code §1194.2 in an amount equal to the wages unlawfully unpaid and interest thereon." (Complaint, ¶¶ 55, 59 and Prayer for Relief at ¶ 10, page 44, lines 10-11.) Thus, the amount in controversy on Plaintiff's claim for liquidated damages is $2,886,647.83 for his First Cause of Action.

40.    Accordingly, the amount in controversy on Plaintiff's First and Second Cause of Action for allegedly unpaid wages and liquidated damages is **$5,773,295.66**.

///

///

///

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT                    Case No. _____
TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446
121194871.v2

ii.    **Third and Fourth Causes of Action: Premiums for Alleged Missed Rest and Meal Periods**

41.    In support of his Third Cause of Action for Rest Breaks, Plaintiff alleges that

Defendants have ***promulgated and enforced policies and practices*** under which Plaintiff and his fellow members of the Class ***regularly worked shifts in excess of four hours without being permitted the opportunity to take a paid rest period*** of at least ten (10) consecutive minutes, uninterrupted, relieved of all job duties, and worked more than six (6) hours at a time without being allowed a second paid ten (10) consecutive minute, uninterrupted, rest period, relieved of all job duties. [¶]

...***[N]o member of the Class has ever been paid*** their earned compensation for work performed by members of the Class during the rest period to which they were entitled, yet not provided the opportunity to take, as well as additional monies required under Labor Code § 226.7.

(Complaint, ¶¶ 114 and 115, emphasis added.)

42.    In support of his Fourth Cause of Action for Meal Breaks, Plaintiff alleges:

...***[D]uring each day and week of each pay period*** within the applicable limitations period, Defendants promulgated and enforced policies and practices under which the Plaintiff and his fellow members of the Class regularly worked more than five (5) hours at a time without being permitted the opportunity to take a meal period of at least thirty (30) consecutive minutes, uninterrupted, relieved of all job duties, and worked more than ten (10) hours at a time without being allowed a second thirty (30) consecutive minute, uninterrupted, meal period, relieved of all job duties.

... ***[N]either*** Plaintiff nor his fellow members of the Class ***have ever been paid*** their earned compensation for work they performed during the meal period to which they were entitled, yet not provided the opportunity to take, as well as additional monies required under Labor Code § 226.7.

(Complaint, ¶¶ 118 and 120, emphasis added.)

43.    The foregoing allegations support a plausible assumption of a 100% violation rate.

44.    Assuming that each putative class member missed one meal period for each of the two days worked in California during each of the 33,053 workweeks they collectively worked from December 2, 2016 to March 31, 2021, the putative class meal period premium damages would be approximately  **$1,924,345.66** [$29.11/hour x 2 violation/week x 33,053 workweeks]. Likewise, assuming that each putative class member missed one rest period for each of the average two days worked in California per week, the putative class rest period premium damages from December 2, 2016 to March 31, 2021 would also be approximately **$1,924,345.66** [$29.11/hour x 2 violation/week x

33,053 workweeks]. Thus, an estimate of the amount in controversy for Plaintiff's meal and rest break premium claims is approximately **$3,848,691.32**. This amount is just based on the asserted missed break premiums owed, and does not take into account the related unpaid wages for time worked.

### iii.    6th Cause of Action: Waiting Time Penalties

45.    Plaintiff's Sixth Cause of action is for waiting time penalties under Labor Code section 203. Plaintiff alleges that "*for each day and week of each pay period* within the applicable limitations period, Plaintiff and/or members of the Class' employment relationship with Defendants was terminated without Defendants paying all wages and compensation due…" (Complaint, ¶ 130.)  The foregoing allegations support a plausible assumption of a 100% violation rate.

46.    This claim is subject to a three-year statute of limitation period. *Pineda v. Bank of America, NA*, 50 Cal. 4th 1389 (2010).

47.    From December 2, 2017 to March 31, 2021, there were approximately 269 terminations of employment among interstate drivers.  (Fiedler Dec., ¶ 7.)  The average number of hours worked per day is 8.2 hours, and the lowest possible average hourly rate of pay is $29.11. (See ¶ 37, supra.) Accordingly, although Defendant disputes liability, a reasonable estimate of the amount in controversy for this cause of action is **$1,926,325.14** [$29.11 x. 8.2 hours/day x 30 days x 269 terminations].

### iv.    7th Cause of Action: Non-Compliant Wage Statements

48.    In support of his Seventh Cause of Action, Plaintiff alleges:

> … *[F]or each day and week of each pay period* within the applicable limitations period, Defendants failed to provide Plaintiff and his fellow Class Members with an accurate itemized statement in writing that complied with Labor Code § 226, including, but not limited to, the following: failing to accurately report the total number of hours actually worked by Plaintiff and his fellow members of the Class failing to accurately record all earned overtime; failing to list the applicable hourly rate in effect during the pay period and accurately record the corresponding number of hours worked at each hourly rate by Plaintiff and his fellow members of the Class; failing to document non-productive time; and erroneously identifying the name of the employer as Western Transportation Distributing Co.

(Complaint, ¶ 142, emphasis added.)

49.    Based on these allegations, Plaintiff claims that he and the putative class members "are entitled to recover the greater of all actual damages or fifty dollars for the initial pay period in which a

Case No. _____

violation occurred and one hundred dollars per for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000, plus costs and reasonable attorney's fees pursuant to California law, including, but not limited to, Labor Code § 226(e)." (Complaint, ¶ 143.)

50.    Given Plaintiff's allegations that non-compliant wage statements were provided to him and putative class members "for each and every week of each pay period," it is reasonable to assume that, under Plaintiff's theory, each wage statement issued to putative class members were not compliant during the relevant period of time. *See Duberry v. J. Crew Grp., Inc.*, No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018, at *6-7 (C.D. Cal. July 28, 2015) (finding it reasonable to apply a 100% violation rate as to the inaccurate wage statement claim); *Korn*, 536 F. Supp. 2d at 1204 (courts may consider maximum penalty in calculating amount in controversy for wage statement claim).

51.    Plaintiff's wage statement claim is subject to a one-year statute of limitations. *See Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462 (S.D. Cal. 2007) ("Recovery under § 226(a) constitutes a penalty and is therefore governed by a one-year statute of limitations under California Code of Civil Procedure § 340(a).").

52.    During the period of December 2, 2019 to March 31, 2021, Defendant issued pay statements to its interstate drivers on a weekly basis. (Fiedler Decl., ¶ 9.)  During this same period, December 2, 2019 to March 31, 2021, Defendant issued approximately 10,262 wage statements to 261 interstate drivers. (Fiedler Decl., ¶ 9.) California Labor Code section 226(e) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [Labor Code section 226] subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Labor Code § 226(e)(1). Accordingly, a conservative estimate of Plaintiff's claim for Section 226 penalties, which takes into account Section 226(e)(1)'s $4,000 cap per employee, results in an amount in controversy for the statutory time period of **$692,600.00** ([$50 X 261 initial violations] + [$100 X 9,814 subsequent violations not exceeding total of $4,000 per employee]).

53.    Even without including all of Plaintiff's claims, a reasonable estimate of the amount in controversy based on the above claims is **$12,240,912.12**. This amount does not factor in any estimated

1  recovery based on Plaintiff's allegations of unpaid minimum wages, liquidated damages for unpaid

2  wages, alleged failure to timely pay all wages pursuant to Labor Code section 204, alleged violation of

3  the California Wage Theft Prevention Act, alleged conditioning of pay on the execution of a statement

4  of hours, alleged unpaid business expenses, any PAGA penalties, and interest.

5            **m.**    **Attorney's Fees**

6        54.    It is a long-established principle in the Ninth Circuit, and a common practice among

7  federal district courts, to include an estimate of attorneys' fees in determining whether the jurisdictional

8  amount for removal has been met.  *See Fritsch v. Swift Transp. Co. of Arizona*, 899 F.3d 785, 794 (9th

9  Cir. 2018) (affirming that "a court must include future attorneys' fees recoverable by statute or contract

10 when assessing whether the amount in controversy requirement is met"); *Galt G/S v. JSS Scandinavia*,

11 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may be included when calculating the amount in

12 controversy); *Goldberg v. CPC International*, 678 F. 2d 1365, 1367 (9th Cir. 1982) ("potential

13 attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement)

14 (emphasis added); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n. 4 (N.D. Cal. 2002)

15 ("While an estimate of the amount in controversy must be made based on facts known at the time of

16 removal, that does not imply that items such as future income loss, damages, or attorney's fees likely to

17 be incurred cannot be estimated at the time of removal").  "[T]he measure of fees should be the amount

18 that can reasonably be anticipated at the time of removal, not merely those already incurred."  *Simmons*

19 *v. PCR Technology*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (court may apply its "twenty-plus

20 years' experience" to project the likely attorneys' fees to be incurred, even if the specific "attorney's

21 fees cannot be precisely calculated" at the time of removal).

22       55.    Consideration of attorney's fees is also appropriate in evaluating whether the

23 jurisdictional amount has been met under CAFA.  *See, e.g.*, *Rodriguez v. Cleansource, Inc.*, 2014 WL

24 3818304, *3-5 (S.D. Cal., Aug. 4, 2014) (denying motion to remand because CAFA jurisdictional

25 amount was met when attorneys' fees in the amount of 25% of the common fund were included in the

26 amount in controversy estimate); *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, *9 (S.D. Cal.

27 Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be

28 incurred when analyzing disputes over the amount in controversy under CAFA."); *Campbell v. Vitran*

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT         Case No. _____
TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446
121194871.v2

1  *Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in

2  determining amount in controversy under CAFA).

3        56.    Defendant's calculation of attorneys' fees need only be "plausible," and does not require

4  proof by "evidentiary submissions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)

5  (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)) ("'[A]

6  defendant's notice of removal need include only a *plausible allegation* that the amount in controversy

7  exceeds the jurisdictional threshold,' and *need not contain evidentiary submissions*.") (emphasis

8  added).  Plaintiff cannot defeat removal based on the attorneys' fees calculation unless he can show that

9  it is "legally impossible for [him] to recover that much." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d

10  395, 401 (9th Cir. 2010) (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)) ("[O]nce

11  the proponent of federal jurisdiction has explained *plausibly* how the stakes exceed $5 million . . . *then*

12  *the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much*.")

13  (emphases added).

14        57.    Federal courts have held that, for purposes of removal, it is "plausible" to calculate

15  attorneys' fees as 25% of the total potential damages likely to be recovered. *Powers v. Eichen*, 229 F.3d

16  1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a

17  'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Mendoza v.*

18  *Nat'l Vision, Inc.*, No. 19-CV-01485-SVK, 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) ("The

19  Court agrees that 25% of the aggregate amount in controversy provides a reasonable estimate of the

20  potential attorneys' fees at issue."); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL

21  1230826, at *28 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive

22  benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the

23  total settlement payment was appropriate and reasonable in the case); *Molnar v. 1-800-Flowers.com,*

24  *Inc.*, No. 08-CV-0542-CAS-JCx, 2009 WL 481618, *5 (C.D. Cal. Feb. 23, 2009) ("fair estimate of

25  attorneys' fees in this action is 25% of compensatory damages"); *Tompkins v. Basic Research LL*, No.

26  CIV. S08244-LKK-DAD, 2008 WL 1808316, *4 (E.D. Cal. Apr. 22, 2008) (when calculating attorneys'

27  fees for remand purposes, a reasonable estimate is 25% of the common fund).

28  *///*

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT                    Case No. _____
TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446
121194871.v2

58.     As set forth above, the amount placed in controversy by just six of Plaintiff's twelve causes of action—i.e., those for unpaid wages, uncompensated meal and rest periods, and wage statement and waiting time penalties—already allegedly totals at least $12,240,912.12. Plaintiff also seek attorneys' fees (*see* Complaint, ¶¶ 46, 54, 56, 57, 99, 109, 111, 137, 143, 173, Prayer for Relief, ¶ 14). Attorneys' fee awards in California wage and hour class actions can total millions of dollars. *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equates to total fees of $1,199,550 in class action involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ("[I]t is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'" (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

59.     Assuming *arguendo* that the amount in controversy as to Plaintiff's claims for attorneys' fees is the ***more conservative 20% benchmark*** of the aggregate alleged amount in controversy for the six causes of action identified above, Plaintiff's recovery of attorney's fees is no less than $2,448,182.42.  At this more conservative 20% benchmarked estimate, the **total amount in controversy is at least $14,689,094.54**.

60.     Even without including all of Plaintiff's claims and based on the allegations in Plaintiff's Complaint, a reasonable estimate of the amount in controversy based on the above claims is $14,689,094.54. This amount does not factor in any estimated recovery based on Plaintiff's allegations of unpaid wages including minimum wages, liquidated damages for unpaid wages, alleged failure to timely pay all wages pursuant to Labor Code section 204, alleged violation of California Wage Theft Prevention Act, allegedly requiring employees to execute statement of hours as a condition of being paid, for alleged unpaid business expenses, and any PAGA penalties.

61.     Removal of this action is therefore proper as the aggregate value of Plaintiff's class claims for statutory damages, statutory penalties, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5,000,000. *See* 28 U.S.C. § 1332(d)(2).

1       62.    In light of the above, there is no question that Plaintiff's claims exceed the jurisdictional

2   minimum. Accordingly, the "amount in controversy" requirement under CAFA is satisfied in this case.

3   **VI.    NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT**

4       63.    Following the filing of this Notice of Removal in the United States District Court for the

5   Northern District of California, written notice of such filing will be given by the undersigned to

6   Plaintiff's counsel of record, and a copy of the Notice of Removal without its accompanying exhibits

7   will be filed with the Clerk of the Monterey County Superior Court in accordance with 28 U.S.C. section

8   1446(d).

9       WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of

10  California, County of Monterey, to the United States District Court for the Northern District of

11  California.

12  DATED:  April 1, 2021             Respectfully submitted,

13                               FOX ROTHSCHILD LLP

14                               By:   */s/ Tyreen G. Torner*

15                                  STEVEN W. MOORE
                                    DAVID F. FAUSTMAN

16                                  TYREEN G. TORNER
                                    STEVEN WONG

17                               Attorneys for Defendant
                                 WESTERN DISTRIBUTING COMPANY. INC.

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT          Case No. _____
TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446
121194871.v2

1

## CERTIFICATE OF SERVICE

2    I am employed in the County of San Francisco, State of California.  I am over the age of
eighteen years and not a party to this action.  My business address is:  Fox Rothschild LLP, 345
3    California Street, Suite 2200, San Francisco, CA 94104-2670.

4    On April 1, 2021, I served the following document(s):

5    **NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C.
SECTIONS 1332, 1441, AND 1446**

6

7

8    on the interested party(ies) in this action by placing true copies thereof enclosed in sealed
envelope(s) addressed as follows:

9

| David D. Bibiyan | Paul J. Denis | Robert W. Skripko, Jr. |
|---|---|---|
| Diego F. Aviles | Ethan E. Rasi | Law Office of Robert W. Skripko, |
| Bibiyan Law Group, P.C. | Denis & Rasi, PC | JR., PC |
| 8484 Wilshire Blvd., Suite 500 | 38 Corporate Park, | 38 Corporate Park |
| Beverly Hills, CA 90211 | Irvine, CA 92606 | Irvine, CA 92606 |
| Tel: (310) 438-5555; | Tel: (714) 242-4557; | Tel: (949) 476-2000; |
| Fax: (310) 300-1705 | Fax: (213) 443-9601 | Fax: (949) 476-2007 |
| david@tomorrowlaw.com; | pdenis@denisrasilaw.com; | rwskripko@skripkolaw.com |
| diego@tomorrowlaw.com | erasi@denisrasilaw.com | Attorneys for Plaintiff |
| Attorneys for Plaintiff | Attorneys for Plaintiff | |

15

☐    **[BY FIRST CLASS MAIL]:**  I placed the envelope for collection and mailing following
16    our ordinary business practices.  I am readily familiar with this business's practice for
collecting and processing correspondence for mailing.  On the same day that
17    correspondence is placed for collection and mailing, it is deposited in the ordinary course of
business with the United States Postal Service in a sealed envelope with postage fully
18    prepaid.

☐    **[BY FACSIMILE]:**  I caused said document(s) to be faxed to the facsimile number(s)
19    above.

20    ☑    **[BY EMAIL]:**  I electronically served the above document(s) from
farjam@foxrothschild.com to the email address of the addressee(s) listed above.

21    ☐    **[BY ELECTRONIC TRANSMISSION]:**  I caused said document to be electronically
served through Case Anywhere pursuant to the Court's Order Authorizing Electronic
22    Service dated _____, to the names and email addresses listed on the Service List
attached hereto."

23    ☑    **[FEDERAL]** I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct and that I am employed in the office of a
24    member of the bar of this Court at whose direction the service was made.

25    Executed on April 1, 2021, at San Francisco, California.

26

27    _____
Farshid Arjam

28